Filed 7/25/24  P. v. Fletcher CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082663 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CR125915) |
| BRIAN RAY FLETCHER, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David L. Berry, Judge.  Reversed and remanded with directions.

John L. Staley, under appointment by the Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Seth Friedman, and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

Brian Ray Fletcher appeals from the trial court's order denying, at the prima facie stage, his petition for resentencing under Penal Code[1] section 1172.6, in which he sought relief from a 1997 conviction for first degree murder (§ 187, subd. (a).)  We conclude that the record of conviction did not establish Fletcher's ineligibility for relief.  We accordingly reverse the trial court's order denying the petition for resentencing, and we remand for further proceedings.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1999 we affirmed Fletcher's 1997 conviction for first degree murder and attempted robbery in an unpublished opinion.  (*People v. Fletcher et al.* (Sep. 13, 1999, D029019) [nonpub. opn.].)  Fletcher is serving a term of life without the possibility of parole, along with a five-year consecutive term.[2]

As set forth in our 1999 opinion,[3] in the early morning hours of June 20, 1991, a taxicab was abandoned on a freeway onramp, and the driver

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]     On March 13, 2024, the People filed a request for judicial notice regarding documents from Fletcher's criminal prosecution that were not presented to the trial court in connection with the litigation of Fletcher's petition for resentencing.  The documents at issue are (1) the operative third amended information; (2) the closing arguments from the 1997 trial; and (3) the returned and unused verdict forms from the 1997 trial.  We grant the request, which is unopposed.

[3]     We refer to our 1999 opinion solely for general contextual background. We do not rely upon the factual summary from the 1999 opinion to evaluate whether the trial court erred in concluding that Fletcher failed to make a prima facie showing of eligibility for relief.  (See *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1113 [concluding that the trial court erred, at the prima

left the scene. A short time later, Maria Estrada drove by and saw two men standing behind the taxicab, waving for her to stop, which she did. One of the men told Estrada the taxicab had broken down and asked her three times if she had jumper cables he could use to start it. Estrada said she did not have jumper cables. The man said something like, "Oh, no." The other man laughed. One of the men then fatally shot Estrada.

The People charged both Fletcher and codefendant Terrance Kent Moord with first degree murder (§ 187, subd. (a)) and attempted robbery (§§ 211, 664). The two men were tried together.[4] The charges against the two men differed only in that the People made additional allegations against Fletcher based on the theory that he was the shooter. Specifically, against Fletcher, but not against Moord, the People alleged (1) a robbery-murder special circumstance (§ 190.2, subd. (a)(17)); and (2) that he personally used a firearm in committing the murder and the attempted robbery. (§ 12022.5, subd. (a).)[5]

As the jury instructions show, the prosecution proceeded against both defendants under several alternative theories for first degree murder: (1) direct liability for a premeditated murder either as the killer or as a direct aider and abettor of the killing; (2) felony murder based on a killing during a burglary or an attempted robbery; (3) aiding and abetting the crime of

---

facie stage, in relying on the factual summary contained in a prior appellate opinion].)

[4] The 1997 conviction arose from Fletcher's third trial. The first trial resulted in a hung jury on the murder and attempted robbery counts. The second trial resulted in a guilty verdict that was reversed on appeal.

[5] The firearm allegations against Moord alleged only that a principal was armed with a firearm during the crimes. (§ 12022, subd. (a)(1))

burglary or attempted robbery with murder being a natural and probable consequence of that crime; and (4) participation in a conspiracy to commit burglary or robbery during which a killing occurred, including under a natural and probable consequences theory.

The jury found both Fletcher and Moord guilty of first degree murder (§ 187, subd. (a)) and attempted robbery (§§ 211, 664). The jury also made a true finding on a robbery-murder special circumstance allegation against Fletcher (§ 190.2, subd. (a)(17)), along with true findings that Fletcher personally used a firearm for both crimes (§ 12022.5, subd. (a).) As to Moord, the jury made true findings that a principal was armed with a firearm during the offenses. (§ 12022, subd. (a)(1)).[6]

On October 13, 2022, Fletcher filed a petition for resentencing (§ 1172.6) by submitting a preprinted form. The trial court appointed counsel to represent Fletcher and directed the parties to file briefing to determine whether Fletcher established a prima facie case of eligibility for relief.

The People argued that the jury's true findings that Fletcher personally used a firearm during the offenses (and the absence of such a finding as to Moord) established that Fletcher was the actual killer, and he therefore could

---

[6]    As to Fletcher, there were also allegations under section 12022, subdivision (a)(1) that a principal was armed with a firearm during both offenses. The jury was instructed accordingly. However, the verdict forms relating to those allegations against Fletcher were incorrectly drafted. The verdict forms correctly identified the correct Penal Code provision (§ 12022, subd. (a)(1)), but they incorrectly described the allegation as being that Fletcher did "*personally use*" a firearm, rather than that he was *armed* with a firearm. (Italics added.) A similar problem appeared on the verdict forms relating to the allegations against Moord that a principal was armed with a firearm during the offenses. However, the jury brought the problem to the attention of the trial court during deliberations, and Moord's verdict forms were corrected.

not establish a prima facie case that he was eligible for resentencing. (See *People v. Lopez* (2022) 78 Cal.App.5th 1, 14 [a "petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that . . . the petitioner was the actual killer"].)

After holding a hearing, the trial court agreed with the People that the true findings on the firearm allegations were dispositive to establish Fletcher was the actual killer, and it therefore summarily denied Fletcher's petition for resentencing. Fletcher appeals.

## II.

## DISCUSSION

A. *Legal Standards Applicable to Petitions for Resentencing*

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.), which limited accomplice liability under the felony-murder rule, eliminated the natural and probable consequences doctrine as it relates to murder, and eliminated convictions for murder based on imputing malice solely due to a person's participation in a crime. (See *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

"Senate Bill [No.] 1437 altered the substantive law of murder in two areas. First, with certain exceptions, it narrowed the application of the felony-murder rule by adding section 189, subdivision (e) to the Penal Code. Under that provision, "A participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

5

[¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).) (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

"Second, Senate Bill [No.] 1437 imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).) 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' (*Ibid*.)" (*Curiel, supra*, 15 Cal.5th at p. 449.) "Thus, after the enactment of Senate Bill [No.] 1437, a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing of malice aforethought. [Citation.] It is an invalid theory. Murder liability requires a different, valid theory, such as direct aiding and abetting." (*Curiel*, at p. 462.)

Under section 1172.6, a person serving a sentence for murder, attempted murder or manslaughter under theories that have since been eliminated or narrowed may file a petition to have the conviction vacated and to be resentenced. (§ 1172.6, subd. (a).)[7] A person is eligible for relief if that person "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, at subd. (a)(3).) "As a matter of law, resentencing relief under section 1172.6 is not available to an 'actual killer.' " (*People v. Garcia* (2022) 82 Cal.App.5th 956, 973; see also Stats. 2018, ch. 1015, § 1(f) [the Legislature amended "the felony murder rule and the natural and probable consequences

---

7    Until June 30, 2022, section 1172.6 was codified as section 1170.95. (Stats. 2022, ch. 58, § 10.) We refer to the current codification throughout this opinion.

6

doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person *who is not the actual killer*, did not act with the intent to kill or was not a major participant in the underlying felony who acted with reckless indifference to human life," italics added].)

After appointing counsel if a petitioner makes such a request (§ 1172.6, subd. (b)(3)), a trial court must first evaluate the petition to determine whether the petitioner has made a prima facie showing of eligibility for relief. (*Id.,* at subd. (c).) At the prima facie stage, " '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' " (*Curiel, supra*, 15 Cal.5th at p. 450.) If a prima facie showing is made, the court issues an order to show cause, which requires the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to section 188 or 189. (§ 1172.6, subds. (c), (d).)

Fletcher's appeal concerns a trial court determination at the prima facie stage. At that stage, "the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief." (*Lewis, supra*, 11 Cal.5th at p. 972.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case . . . , the prima facie inquiry . . . is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.' . . . 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination

7

adverse to the petitioner." ' " (*Id.* at p. 971, citations omitted.) Among other things, "we may look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the factual allegations in [the] petition." (*Curiel, supra*, 15 Cal.5th at p. 465.)

"We review de novo an order denying a section 1172.6 petition at the prima facie review stage." (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170.)

B.    *The Trial Court Erred in Relying on the True Findings on the Firearm-Use Allegations to Conclude That Fletcher Was the Actual Killer*

Fletcher's opening appellate brief argues that the trial court erred in relying upon the true findings on the firearm-use allegations to conclude he was the actual killer. As Fletcher explains, "The jury instruction defining personal use of a firearm stated that [Fletcher] '[m]ust have intentionally displayed a firearm in a menacing manner, intentionally fired it, or intentionally struck or hit a human being with it.' . . . This instruction did not even require appellant to discharge the firearm for the personal use allegation to be found true." Fletcher further argues the lack of a personal-use finding as to Moord is irrelevant because the People did not allege that Moord personally used a firearm, and the jury was therefore not asked to decide that issue.

In their respondent's brief, the People concede that the true finding that Fletcher personally used a firearm does not establish Fletcher was the actual killer. The People acknowledge the jury instructions informed the jury that it could make a true finding that Fletcher personally used a firearm if he used it any number of ways, only one of which involved firing it at someone. The People explain that, therefore, the true finding that Fletcher personally used a firearm "does not conclusively establish, by itself, that [Fletcher] was the direct perpetrator of the murder on the facts in this case."

8

We accept the People's concession. The jury instructions stated that " 'personally used a firearm' . . . means that the defendant must have intentionally displayed a firearm in a menacing manner, intentionally fired it, or intentionally struck or hit a human being with it." As explained by our Supreme Court in a case where, as here, the defendant was found to have personally used a firearm pursuant to section 12022.5, "[t]he finding of personal use . . . would not in itself prove defendant was the actual killer. If two robbers display guns to intimidate robbery victims and one shoots and kills a victim, both robbers could be found to have personally used a gun in the robbery and the felony murder, even though only one is the actual killer." (*People v. Jones* (2003) 30 Cal.4th 1084, 1120.) Similarly, our Supreme Court in *People v. Young* (2005) 34 Cal.4th 1149, 1205 acknowledged that because a weapon is "used" when "it is merely displayed in a menacing manner and never fired," a true finding on a gun-use allegation "does not necessarily establish that [the defendant] is the actual killer." Therefore, at the prima facie stage "personal use does not automatically show the defendant is the actual killer because a gun could be used in different ways." (*People v. Garrison* (2021) 73 Cal.App.5th 735, 743–744.)

C.    *The Completed Verdict Form for the Robbery-Murder Special Circumstance Allegation Does Not Establish Fletcher Is Ineligible for Relief at the Prima Facie Stage*

Although the People concede there is merit to Fletcher's appellate argument that the true findings on the firearm-use allegations do not make him ineligible for relief under section 1172.6, the People's respondent's brief sets forth a new theory for affirming the trial court's denial of Fletcher's petition for resentencing. The People's new theory is based on the jury's true finding on the robbery-murder special circumstance allegation (§ 190.2, subd. (a)(17)).

9

We could decline to reach the issue because the People failed to raise it below.[8] However, in the interest of judicial efficiency we will exercise our discretion to address it.

1. *The Jury's True Finding on the Robbery-Murder Special Circumstance Allegation*

We begin our analysis by examining the jury's true finding on the robbery-murder special circumstance allegation.

Under section 190.7, subdivision (a)(17), "[t]he penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if . . . (17) The murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit, the following felonies: [¶] (A) Robbery . . . ." (§ 190.2, subd. (a)(17).)

The statute expressly provides that when, as here, a murder occurs during an attempted robbery, the robbery-murder special circumstance may be applied to three categories of defendants: (1) the actual killer (§ 190.2, subd. (b)); (2) an aider and abettor of the murder who acts with the intent to kill (*id.*, at subd. (c)); and (3) an aider and abettor of the attempted robbery who acts "with reckless indifference to human life" and is "a major participant" in the attempted robbery (*id.*, subd. (d).) Fletcher's jury was instructed with those three different theories.

---

8 " ' "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." ' " (*Truck Insurance Exchange v. AMCO Insurance Company* (2020) 56 Cal.App.5th 619, 635.)

10

The instruction was titled "Special Circumstances – Introductory [¶] Penal Code § 190.2." (Capitalization omitted). It stated in relevant part:

"If you find defendant [Fletcher] in this case guilty of murder of the first degree, you must then determine whether the special circumstance [alleged] is true or not true: that defendant [Fletcher] murdered [Estrada] while engaged in, or was an accomplice in, the commission or attempted commission of, or immediate flight after committing, or attempting to commit a Robbery. [¶] . . . [¶]

"If you are satisfied beyond a reasonable doubt that [Fletcher] *actually killed* a human being, you need not find that he intended to kill in order to find the special circumstance to be true.

"If you find that defendant Fletcher was not the actual killer of a human being, or if you are unable to decide whether he was the actual killer or an aider and abettor or co-conspirator, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant *with the intent to kill* aided, abetted, counseled, commanded, induced, requested or assisted any actor in the commission of the murder in the first degree *or with reckless indifference to human life and as a major participant*, aided, abetted, counseled, commanded, induced, requested, or assisted in the commission of the crime of Robbery which resulted in the death of a human being . . . ." (Italics added.)

The instruction further stated, "You will state your special finding as to whether the special circumstance is or is not true on the form that will be supplied." The jury made a true finding on the robbery-murder special circumstance by writing "true" on the verdict form that was supplied. However, the verdict form did not track the language of the instruction or the applicable statute. Although the jury instruction identified three ways to find a defendant eligible for a special circumstance finding when a killing occurs during an attempted robbery, the only option given on the verdict form was that Fletcher "intended to kill." As completed, the verdict form stated:

11

"We, the jury in the above entitled cause, find the special circumstance that the murder of [Estrada] was committed by defendant [Fletcher] while the said defendant was engaged in the commission or the attempted commission of the crime of Robbery, in violation of Section 211, and that the defendant intended to kill a human being within the meaning of Penal Code section 190.2 (a)(17), to be true."

The verdict form did not give the jury the option to make a true finding on the robbery-murder special circumstance under either of the *other* two possible theories identified in the jury instructions, namely, (1) that Fletcher was the actual killer; or (2) that Fletcher was a major participant in the attempted robbery and acted with a reckless indifference to human life.

The record in this appeal contains no indication that the jury was given *alternative* verdict forms for the robbery-murder special circumstance that they decided not to use in favor of the verdict form setting forth a finding that Fletcher acted with an intent to kill. For the purpose of our analysis we therefore assume that, although the jury was instructed on three different theories for a true finding on the robbery-murder special circumstance, the jury was given a verdict form that identified *only* the theory that Fletcher intended to kill Estrada.

2. *Case Law Limiting the Use of a Robbery-Murder Special Circumstance True Finding to Establish That a Petitioner Is Ineligible for Resentencing*

To supply the relevant legal context, we must next discuss the instances in which a true finding on a robbery-murder special circumstance may be used by a trial court considering a petition for resentencing to determine that a petitioner is ineligible for relief.

In Senate Bill No. 1437, the Legislature "repurpose[d] preexisting law governing felony-murder special-circumstance findings—the findings a jury makes in felony-murder cases to determine whether the defendant may be

12

sentenced to death or life without possibility of parole (. . . § 190.2, subd. (d))—to define eligibility for sentencing relief." (*People v. Strong* (2022) 13 Cal.5th 698, 703 (*Strong*).) Specifically, under the current felony murder rule, as narrowed by Senate Bill No. 1437, "[a] participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).) There is, accordingly, a close overlap between the requirements for a true finding on a robbery-murder special circumstance and the requirement for a felony murder conviction under current law.

In *Strong*, *supra*, 13 Cal.5th 698, our Supreme Court examined whether a jury's true finding on a robbery-murder special circumstance could be used to deny a petition for resentencing, at the prima facie stage, on the grounds that the true finding established the petitioner was guilty of murder as a major participant in the underlying felony and acted with reckless indifference to human life. *Strong* explained that a jury's true finding that the defendant was a major participant and acted with reckless indifference to human life will create issue preclusion in a petition for resentencing *only if* the murder conviction occurred *after* the statutory phrases "major participant" and "reckless indifference to human life" were more fully explained in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). (*Strong*, *supra*, 13 Cal.5th at p. 703.)

13

Special circumstance findings made before that time are not sufficient to establish, without more, that the petitioner would still be guilty of murder under existing law. (*Ibid.*)

Because Fletcher's conviction occurred in 1997—long before *Banks* and *Clark* were decided—Fletcher argued in the trial court, based on *Strong*, *supra*, 13 Cal.5th 698, that the jury's true finding on the robbery-murder special circumstance could not be used to find him ineligible for resentencing. Specifically, Fletcher's briefing in the trial court argued that because the jury was instructed on three different theories for the robbery-murder special circumstance, it was impossible to determine based solely on the record of conviction which theory the jury (or any individual juror) might have relied upon in making the robbery-murder special circumstance true finding. Fletcher explained that if the jury relied on the theory that he was a major participant in the robbery and acted with reckless indifference to human life, *Strong* precluded the use of the jury's special circumstance true finding to establish Fletcher was guilty under the current felony murder statute.

Likely because of *Strong, supra*, 13 Cal.5th 698, the People did not rely on the robbery-murder special circumstance true finding when arguing that Fletcher had failed to make a prima facie showing of eligibility for relief. Further, in its ruling, the trial court expressly stated that, because of *Strong*, it was not relying on the robbery-murder special circumstance true finding to deny the petition for resentencing.

3.   *The People's New Theory Focuses Solely on the Verdict Form for the Robbery-Murder Special Circumstance*

On appeal, the People contend that, despite *Strong*'s holding, because of the wording of the verdict form for the robbery-murder special circumstance, the record of conviction establishes that the jury made a true finding that Fletcher acted with an intent to kill. As the People point out, *Strong, supra*,

14

13 Cal.5th 698, does not preclude the use of a jury's findings, made prior to *Banks,* 61 Cal.4th 788 and *Clark*, 63 Cal.4th 522, that a defendant *intended to kill*. *Strong*'s holding relates only to jury findings that a defendant was a major participant and acted with reckless indifference to human life made prior to our Supreme Court's clarification of those terms in *Banks* and *Clark*. (See *Curiel*, *supra*, 15 Cal.5th at p. 455 [noting that with respect to "[t]he intent to kill finding" at issue in special circumstance allegations "there has been no intervening change in the law akin to *Banks* and *Clark*"].) The People therefore argue that *Strong* does not preclude a court from relying upon the jury's finding, on the robbery-murder special circumstance verdict form, that Fletcher acted *with an intent to kill*.

Premised on their contention that the jury found, on the robbery-murder special circumstance verdict form, that Fletcher acted with an intent to kill, the People contend that the record of conviction establishes that Fletcher is ineligible for resentencing because the jury made all of the findings necessary to convict him of felony murder under current law. According to the People, that conclusion necessarily follows from the hypothetical situation that our Supreme Court discussed in *Curiel*, *supra*, 15 Cal.5th at page 464. " '[S]uppose the jury . . . made findings on all of the other elements supporting felony murder under section 189 as amended, including (1) the commission or attempted commission of a felony enumerated in that statute and (2) the death of a person during the commission or attempted commission of the enumerated felony. In that case, *if the jury additionally found intent to kill,* it would 'ordinarily be dispositive' because the jury's findings would conclusively establish all of the elements of felony murder under current law. [Citation] Considered together, the jury's findings would completely refute a petitioner's allegation that he or she could

15

not currently be convicted of murder because of changes to sections 188 and 189." (*Curiel*, *supra*, 15 Cal.5th at p. 464, italics added.) As the People point out, Fletcher's record of conviction shows Fletcher's commission of an attempted robbery, during which Estrada was killed. Therefore, assuming the robbery-murder special circumstance verdict form reflects a finding that Fletcher acted with the intent to kill, Fletcher would be guilty of felony murder under current law, just like the hypothetical defendant described in *Curiel*.

In his reply brief, Fletcher agrees with the People that if, in fact, the jury found, in connection with the robbery-murder special circumstance allegation, that he intended to kill, that finding would make him ineligible for resentencing. As Fletcher states, he "does not dispute, based [on the language from *Curiel*, *supra*, 15 Cal.5th at p. 464], that a finding by the jury in the robbery-murder special circumstance allegation that [Fletcher] subjectively harbored the intent to kill the victim would disqualify him from relief under section 1172.6." However, Fletcher argues that we should reject the People's new theory because the jury's act of filling in the word "true" on the verdict form for the robbery-murder special circumstance did not constitute a finding that Fletcher acted with the intent to kill.

To determine whether the robbery-murder special circumstance verdict form contains a finding that Fletcher acted with an intent to kill, we begin with the text of the verdict form itself. The People rely on the portion of the verdict form stating *"the defendant intended to kill a human being within the meaning of Penal Code section 190.2 (a)(17)."* (Italics added.) That phrase *does* refer to the defendant's intent to kill. However, when taken as a whole, the phrase is enigmatic because it *also* refers to subdivision (a)(17) of section 190.2, which says nothing about an intent to kill. Instead, subdivision (a)(17)

16

simply sets forth the following special circumstance: "(17) The murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit, the following felonies . . . ," including robbery. (§ 190.2, subd. (a)(17).) Thus, it is unclear what the verdict form means when it refers to the defendant's intent to kill "within the meaning of Penal Code section 190.2 (a)(17)."

In attempting to ascertain the meaning of the relevant phrase in the verdict form, we note that subdivision (a)(17) of section 190.2 is unique because it is the only special circumstance identified in section 190.2 that applies when the defendant was "a major participant" in the underlying felony and acted "with reckless indifference to human life." Specifically, subdivision (d) of section 190.2 states, "Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists *in the commission of a felony enumerated in paragraph (17) of subdivision (a)* which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole *if a special circumstance enumerated in paragraph (17) of subdivision (a)* has been found to be true . . . ." (§ 190.2, subd. (d), italics added.) It is possible, therefore, that in stating that "the defendant intended to kill a human being within the meaning of Penal Code section 190.2 (a)(17)" the verdict form meant to incorporate the concepts of "major participant" and "reckless indifference to human life" set forth in section 190.2, subdivision (d), as those concepts are unique to the special circumstances in subdivision (a)(17) of section 190.2.

17

Despite the possibility that the verdict form intended to refer to the concepts in section 190.2, subdivision (d), the meaning of the phrase "the defendant intended to kill a human being within the meaning of Penal Code section 190.2 (a)(17)" nevertheless remains unclear.  Case law describes how we are to determine the meaning of an ambiguous verdict form.  "Where, as here, a jury's verdict is ambiguous, '[a] verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court.' " (*People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1256, italics added; see also *People v. Jackson* (2014) 58 Cal.4th 724, 748–751 [when a verdict form for a robbery-murder special circumstance failed to identify a murder occurring during an *attempted* robbery and only referenced an *actual* robbery, because the jury instructions referred to *attempted* robbery, there was no merit to the argument that the jury necessarily based its true finding on the commission of an *actual* robbery].)[9] Further, in determining the jury's intention in completing the verdict form, we fall back on the familiar precept that "[w]e presume the jurors understood

_____

[9]     The People cite *People v. Osband* (1996) 13 Cal.4th 622 in support of their contention that the jury's completion of the verdict form shows that the jury found Fletcher acted with an intent to kill.  In *Osband*, the defendant was found guilty of first degree murder, but the trial court failed to provide the jury with a not guilty form for first degree murder and with any forms at all for second degree murder.  (*Id*. at pp. 652, 689.)  *Osband* concluded that the error was not prejudicial because the jury was properly instructed about what to do if it did not find the defendant guilty of first degree murder, and it accordingly would have asked for appropriate verdict forms if they were needed.  (*Id*. at pp. 689–690.)  Here, in contrast, the problem is not that verdict forms were missing, but that the verdict form supplied to the jury was ambiguous as to what it meant by "the defendant intended to kill a human being within the meaning of Penal Code section 190.2 (a)(17)."  *Osband* does not provide guidance on how to resolve that issue.

18

and followed the instructions." (*People v. Johnson* (2015) 61 Cal.4th 734, 770.)

Here, the jury instruction on the robbery-murder special circumstance, which we presume the jury understood and followed, clearly informed the jurors about *three* different theories they could use in making a true finding: (1) Fletcher was the actual killer; (2) Fletcher aided and abetted the murder with the intent to kill; or (3) Fletcher was a major participant in the attempted robbery and acted with reckless indifference to human life. In light of that jury instruction, which is in the disjunctive, the jury could have relied on any one of the three theories when making a true finding that "the defendant intended to kill a human being within the meaning of Penal Code section 190.2 (a)(17)." We therefore reject the People's contention that the verdict form establishes the jury *necessarily* relied *only* on the theory that Fletcher aided and abetted the murder with the intent to kill.

Having determined that the robbery-murder special circumstance verdict form could be read to refer to any one of the three theories set forth in the robbery-murder special circumstance jury instruction, we reject the People's reliance on that verdict form as a basis to affirm the trial court's ruling denying Fletcher's petition for resentencing. If the jury based its true finding either on the theory that Fletcher was the actual killer or on the theory that Fletcher aided and abetted the murder with the intent to kill, there is no dispute that Fletcher *would* be ineligible for resentencing because the jury would have found all of the elements necessary to convict him of felony murder under current law. (§ 189, subd. (e).) However, if the jury based its true finding on the theory that Fletcher was a major participant in the attempted robbery and acted with reckless indifference to human life, that finding cannot serve to establish that Fletcher could be convicted of

19

felony murder under current law (*ibid.*) because Fletcher's trial was prior to *Banks,* 61 Cal.4th 788 and *Clark*, 63 Cal.4th 522. (*Strong, supra*, 13 Cal.5th 698.) Therefore, there is no merit to the People's contention that the robbery-murder special circumstance verdict form necessarily establishes Fletcher is ineligible for resentencing under section 1172.6.

In sum, we conclude that the trial court erred in denying Fletcher's petition for resentencing at the prima facie stage.

## DISPOSITION

The trial court's order denying Fletcher's section 1172.6 petition for resentencing is reversed. The matter is remanded with directions to the trial court to issue an order to show cause and conduct further proceedings in accordance with section 1172.6, subdivision (d).

IRION, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DATO, J.

20